IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN P. BRADLEY,

                                                                OPINION AND ORDER

                Plaintiff,

                                                                  13-cv-859-bbc

     v.

MATTHEW FLYNN,[1]

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action brought under 42 U.S.C. § 1983, pro se plaintiff Kevin P. Bradley contends that defendant Matthew Flynn violated the Fourth Amendment by arresting him without probable cause. Defendant has moved for summary judgment. Dkt. #10. I conclude that even when the facts are viewed in plaintiff's favor, as they must be, defendant had probable cause to arrest plaintiff. Therefore, defendant's motion for summary judgment will be granted. Plaintiff also filed an untimely motion for summary judgment, dkt. #27, but it was filed after the summary judgment deadline and merely raises the same issues as defendant's motion so it will be denied as moot. Finally, plaintiff's motion for sanctions against defendant will be denied for lack of merit. Dkt. #24.

From the parties' proposed findings of fact and the record, I find the following facts

---

[1] The caption has been amended to reflect defendant's spelling of his name as "Matthew" rather than "Mathew."

1

to be undisputed.

## UNDISPUTED FACTS

In December 2011, plaintiff was renting the basement portion of his brother's house. On December 10, 2011, plaintiff and his brother, Stephen, argued over plaintiff's plans to have his friends stay overnight in the basement. Stephen told plaintiff it was against the rules. When plaintiff said that Stephen was wrong and that he would have the friends over, Stephen told plaintiff he would need to leave and demanded plaintiff's keys. Plaintiff refused to comply and told Stephen to leave the basement. When he refused, plaintiff pushed him through the threshold of the basement door and shut the door. Stephen called the police.

The Dane County Sheriff dispatcher informed defendant Matthew Flynn, a sheriff's deputy, of a possible domestic abuse incident in which one brother had pushed the other. When defendant arrived at the residence, he saw Stephen and Stephen's wife. Stephen's wife informed defendant that there was a child staying in the home. Stephen told defendant that plaintiff had pushed him and had locked himself in the basement. Defendant asked Stephen what plaintiff would do if he talked to him; Stephen responded that he did not know. Plaintiff then began walking up the steps from the basement. Defendant met plaintiff at the bottom of the steps to talk.

Plaintiff told defendant that he was renting the basement from Stephen and had paid his rent in full but that he and his brother had gotten in an argument over whether he could

have overnight guests. Plaintiff told defendant that the argument took the form of louder than normal talking but did not involve yelling. Plaintiff said he told Stephen to leave but Stephen refused; plaintiff told defendant that he pushed Stephen out of the basement using one hand. Plaintiff said he was not fearful of Stephen.

Defendant then spoke with Stephen alone. Stephen confirmed plaintiff's version of events, except that he said that plaintiff used two hands to push him. (Plaintiff denies that he used two hands but does not deny that this is what Stephen told defendant.) Stephen said the push was uncomfortable but not painful and that he was fearful of plaintiff when plaintiff put his hands on him and pushed him. Stephen said he warned plaintiff that he would call the police if he did not resolve the situation soon and, when plaintiff refused to answer, Stephen called the police. Stephen told defendant that he was not fearful of his brother after he locked himself in the basement but that he was not sure what he would do.

Roger Finch, another sheriff's deputy, arrived on scene and spoke with Stephen's wife and niece (the child staying in the home). Both told Finch that they had not seen or heard the argument.

Defendant then arrested plaintiff as the aggressor in a domestic abuse incident under Wis. Stat. § 968.075. Defendant wrote a report on the arrest and incident between plaintiff and Stephen. The district attorney did not file formal charges related to this incident.

OPINION

A. Defendant's Motion for Summary Judgment

An arrest is an unreasonable seizure under the Fourth Amendment only if the officer lacks probable cause to make the arrest. Mucha v. Village of Oak Brook, 650 F.3d 1053, 1056 (7th Cir. 2011). "Probable cause exists if 'at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Id. (quoting Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009)). Further, probable cause "means a good reason to act; it does not mean certainty, or even more likely than not, that a crime has been committed . . . ." Hanson v. Dane County, Wisconsin, 608 F.3d 335, 338 (7th Cir. 2010). This means that "[i]n evaluating probable cause, [courts] look only to the information known to the officer at the time of arrest," Mucha, 650 F.3d at 1057, so a later determination of innocence does not foreclose the case. In this case, the question is whether defendant had good reason to believe that plaintiff had committed a crime or was likely to do so. Id.

Defendant says he arrested plaintiff pursuant to Wis. Stat. § 968.075; plaintiff does not dispute that this was the statute under which he was arrested. This statute provides that

> "Domestic abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has a child in common:
>
> 1. Intentional infliction of physical pain, physical injury or illness.

4

> 2. Intentional impairment of physical condition.
>
> 3. A violation of s. 940.225(1), (2) or (3) (describing forms of sexual assault).
>
> 4. A physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under subd. 1, 2 or 3.

It is undisputed that, at the time of the arrest, defendant knew plaintiff had pushed Stephen, an adult person with whom he resided.  Defendant argues that he had probable cause to arrest plaintiff under subdivisions 1 and 4 of Wis. Stat. § 968.075.  Stephen told defendant that the push did not cause him pain or injury, which suggests that subdivision 1 would not have provided a proper basis for arresting plaintiff.  Subdivision 4, engaging in a physical act that may cause another to fear pain or injury, provides a stronger basis for plaintiff's arrest.

The question is whether defendant had "good reason" to believe that plaintiff committed domestic abuse under subdivision 4, in other words, good reason to believe that plaintiff's push "may cause [Stephen] reasonably to fear imminent engagement [in intentional infliction of pain]."  § 968.075(1)(a)(4); Hanson, 608 F.3d at 338.  In determining whether a reasonable person would fear pain or injury requires a court to consider the totality of the circumstances between the aggressor and victim, including their history and the events surrounding the incident.  Wisconsin courts have considered similar factors in determining this question in criminal cases.  (Unfortunately for the development of the law on this topic, few of these cases have been selected for publication as precedential.)  E.g., State v. Bandy, Nos. 2014AP1055–CR, 2014AP1056–CR, 2014 WI App 120, ¶ 17, 856 N.W.2d 347 (nonprecedential opinion).

Under plaintiff's version of events, Stephen told defendant he no longer feared

5

plaintiff once plaintiff had locked himself away, so plaintiff argues that at the time of the arrest defendant had no reason to believe Stephen was fearful.  However, Stephen did report that he feared plaintiff during the altercation.  The statute defines domestic abuse under subdivision 4 as an act causing imminent fear, but that does not mean the arrest and fear must be contemporaneous.  The mere passage of time or de-escalation of the incident does not mean that the initial act is no longer grounds for arrest.  Cf. State v. Edwards, 2013 WI App 51, ¶ 12, 347 Wis. 2d 526, 535, 830 N.W.2d 109, 114 (court found victim had imminent fear of harm even though she and defendant were not in physical contact at time of arrest and defendant was then threatening to hurt only himself, because he had beaten victim before making threats to himself).  See also State v. VanEperen, No. 2006AP2659-CR, 2007 WI App 203, ¶ 10, 305 Wis. 2d 378, 738 N.W.2d 191 (nonprecedential opinion) ("The circuit court based its conclusion [dismissing the criminal complaint] on the fact that VanEperen made the right decision when he eventually left the house to cool down without engaging in any physical violence or getting the children involved.  However, VanEperen's conduct after the dispute was over does not mean that his conduct during the dispute was in conformity with the law.").

Further, the statute does not require that the victim actually fear the aggressor.  The statute defines domestic abuse as physical acts that would *objectively* cause fear by another. In other words, under the words of the statute, no matter the subjective feelings of the victim, actors commit domestic abuse if they commit a physical act that would reasonably cause a victim to fear them.  See, e.g., State v. Close, Nos. 2006AP2723-CR,

6

2006AP2724-CR, 2007 WI App 138, ¶ 6, 302 Wis. 2d 263, 732 N.W.2d 864 (nonprecedential opinion) ("Domestic abuse includes all conduct that 'may' cause fear in the other person, not only conduct that actually does cause fear."). In this case, Stephen told defendant that he did not know what plaintiff would do next, which meant that the issue was not resolved between Stephen and plaintiff at the time defendant arrested plaintiff. This statement suggests that plaintiff's future actions were unpredictable. The totality of what defendant knew at the time of the arrest gave him reasonable grounds to believe that plaintiff had committed a physical act that might cause another person reasonably to fear further intentional infliction of pain or injury. Mucha, 650 F.3d at 1057.

Plaintiff argues that even if his actions would otherwise meet the definition of a crime, he was privileged to act under Wis. Stat. § 939.49 because he was defending his property with the minimal force necessary. § 939.49(1) ("A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with the person's property. Only such degree of force or threat thereof may intentionally be used as the actor reasonably believes is necessary to prevent or terminate the interference."). However, the existence of an affirmative defense does not necessarily eliminate probable cause. McBride v. Grice, 576 F.3d 703, 707 (7th Cir. 2009). Although the officer "'may not ignore conclusively established evidence of the existence of an affirmative defense,' the Fourth Amendment imposes no duty to investigate whether a defense is valid." Id. (quoting Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir. 2004)); Sow v. Fortville Police Dept.,

636 F.3d 293, 302 (7th Cir. 2011).

In this case, defendant did not know the parameters of the arrangement between Stephen and plaintiff. He was in no position to decide whether plaintiff had the right to use force against Stephen. There was no "conclusive" evidence that plaintiff was privileged under Wis. Stat. § 939.49, but there *was* undisputed evidence that plaintiff had acted in violation of § 968.075(1)(a)(4). Accordingly, I conclude that defendant had probable cause to arrest plaintiff under § 968.075.

One issue remains that was not discussed by the parties. Under § 968.075(2)(a)(1), police officers are compelled to make arrests when they have good reason to believe that both domestic abuse has occurred, as defined in the statute, *and* the arrested person's actions "constitute the commission of a crime." Therefore, it appears that the domestic abuse statute does not give rise to criminal liability by itself. Rather, Wisconsin courts have treated domestic abuse as a way to categorize and enhance other crimes, not as a crime in itself. E.g., State v. Neis, No. 2009AP1287–CR, 2010 WI App 120, ¶ 15, 329 Wis. 2d 270, 789 N.W.2d 754 (nonprecedential opinion) ("[Wis. Stat. § 968.075(1)(a)] does not create criminal liability for the domestic abuse perpetrator. Neis was charged with and convicted of disorderly conduct under Wis. Stat. § 947.01, as explained above."). See also United States v. Gonzalez-Mancilla, 551 F. App'x 128, 132 (5th Cir. 2014) ("Although § 968.075 defines 'domestic abuse,' it does not create criminal liability. The statute principally sets out policies for police and district attorney's offices to follow in making domestic abuse arrests and prosecutions.") (citing Neis, No. 2009AP1287–CR, 2010 WI App 120).

8

Nevertheless, most acts that come under the definition of "domestic abuse" also fit the definition of "disorderly conduct," a class B misdemeanor in Wisconsin's criminal statutes, which prohibits "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance," "in a public or private place." Wis. Stat.§ 947.01(1). In this case, even if I were to conclude that § 968.075(1)(a) is not a ground for arrest, I would have no trouble concluding that defendant had probable cause to arrest plaintiff for disorderly conduct. He admitted that he had spoken in a voice louder than talking and that he had pushed his brother, both of which actions caused disturbances in their home. The fact that defendant may have identified the incorrect arresting statute is immaterial. Abbott v. Sangamon County, Illinois, 705 F.3d 706, 715 (7th Cir. 2013) ("[A]n arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue").

Finally, I note that even if defendant did not have probable cause to arrest plaintiff for either domestic abuse or disorderly conduct, he is protected from suit under the doctrine of qualified immunity because he had good reason to *believe* he had probable cause, especially in light of the fact that the domestic abuse statute compels arrests in certain circumstances, which likely causes police officers to err on the side of making arrests. Fleming v. Livingston County, Illinois, 674 F.3d 874, 880 (7th Cir. 2012) ("[A] defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'") (quoting Humphrey v. Staszak, 148

F.3d 719, 725 (7th Cir. 1998)); Humphrey, 148 F.3d at 725 ("The court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact."). Accordingly, I conclude that defendant is entitled to summary judgment in his favor.

B. Sanctions

Plaintiff asks the court to order sanctions against defendant for "bad faith" and "falsified evidence" under Fed. R. Civ. P. 56(h), which gives the court discretion to order the payment of expenses, attorney fees or other sanctions when parties file documents for summary judgment in bad faith or to delay the proceedings. Plaintiff argues that defendant made a false statement in his proposed finding of fact no. 39, in which defendant states, "Although Stephen was not as fearful of Kevin after the door shut, he told Deputy Flynn that he was not sure what Kevin was going to do." This proposed finding of fact relies on defendant's affidavit, which states, "[Stephen] stated he was not fearful once the door shut, but he still was not sure what Kevin was going to do."

Plaintiff argues that the addition of the word "as" makes defendant's proposed finding of fact false. I agree that this proposed finding is not well worded, but plaintiff has presented no evidence that defendant acted to mislead the court. Indeed, the ambiguity of Stephen's statement that "he was still not sure what Kevin was going to do," implies that he may have feared plaintiff after the door was shut, even if he said that he did not. Furthermore, I have

construed this disputed fact in plaintiff's favor in this opinion, and plaintiff has not identified any expenses or harm he incurred as a result of defendant's wording. Perhaps defendant should have been more thorough or careful in wording this proposed finding of fact, but I cannot conclude that he acted in "bad faith." Plaintiff's motion will be denied.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff filed a motion for summary judgment on November 29, 2014, well after the September 26, 2014 deadline for doing so. In this motion, plaintiff simply re-argues the same issues he addressed in his brief in opposition to defendant's motion. Because this motion adds nothing to plaintiff's arguments and because defendant's motion for summary judgment will be granted, plaintiff's motion will be denied as moot.

### ORDER

IT IS ORDERED that

1. Plaintiff Kevin Bradley's amended motion for sanctions, dkt. #24, is DENIED.

2. Plaintiff's motion for summary judgment, dkt. #27, is DENIED as moot.

3. Defendant Matthew Flynn's motion for summary judgment, dkt. #10, is

GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 9th day of January, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge